NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000317**
**29-NOV-2012**
**09:08 AM**

NO. CAAP-11-0000317

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ERIC J. MINTON and RICHARD M. STANLEY,
Plaintiffs-Appellants,
v.
SIDNEY A. QUINTAL, JOHN C. FUHRMANN,
CITY and COUNTY OF HONOLULU,
Defendants-Appellees
and
DOE ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-2354)


MEMORANDUM OPINION
(By:  Nakamura, C.J., Foley and Leonard, JJ.)

Plaintiffs-Appellants Eric J. Minton and Richard M. Stanley (collectively, Appellants) appeal from the "Judgment Pursuant to the Findings of Fact and Conclusions of Law" entered March 22, 2011 in the Circuit Court of the First Circuit[1] (circuit court).  The circuit court entered judgment in favor of Defendants-Appellees Sidney A. Quintal, John C. Fuhrmann, and City and County of Honolulu.

I.

The Department of Enterprise Services (DES), a department of the City and County of Honolulu (City), manages and

_____

[1]    The Honorable Rom A. Trader presided.

leases certain City facilities, including the Neal S. Blaisdell Center (NBC) and the Waikiki Shell Amphitheater (Waikiki Shell). The income and revenue received from both the NBC and the Waikiki Shell are substantial, and the City competes with other venues that provide facilities, equipment, and other services for events. The quality and success of events at DES's facilities directly impacts the desirability and requests for these venues by potential lessees, and the City has a substantial interest in maintaining the quality of events held at its facilities.

Appellants Minton and Stanley are stagehands with years of experience, including extensive work at the NBC and the Waikiki Shell. On August 31, 2007, the Director of DES (Director) decided to preclude Appellants from working at events held at either the NBC or the Waikiki Shell. The reason for the ban arose from an Aloha Medical Mission (AMM) event held at the NBC on August 18, 2007, which Appellants had worked. As the lessor, the City does not provide personnel for events, but it does refer event promoters to the International Association of Theatrical Stage Employees (IATSE), a union representing theater and stage workers, to make inquiries and arrangements to hire qualified personnel. Both Appellants are members of IATSE and received work through the union; neither were City employees or had any contractual relationship with the City concerning their employment. AMM contacted IATSE and hired stagehands and sound technicians, including Appellants. Appellant Minton's duties for the AMM show were as head carpenter, stage manager, and crew chief in charge of the stage setup, lighting, video, and sound system. Appellant Stanley served as the show's sound technician.

After the AMM event, the show's promoter emailed IATSE and DES noting that the "sound was very bad" and that he had received many "unfavorable comments from the audience." The Director asked the Auditorium Events and Services Manager for DES (Manager) to investigate the complaint.

Based on the Manager's investigation and on complaints received about the stage crew's lack of professionalism and the

show's sound quality issues, the Director decided to preclude Appellants from future work at events held at either the NBC or the Waikiki Shell. He informed IATSE of his decision in a letter dated August 31, 2007. IATSE's business agent and Appellants wrote to the Director asking him to reconsider his decision, but the Director declined to reverse his decision.

On December 13, 2007, Appellants filed a complaint challenging the ban. The circuit court held a jury-waived trial beginning April 14, 2010 and concluding on April 16, 2010. The circuit court ruled in favor of Appellees and against Appellants. The circuit court entered its Findings of Fact and Conclusions of Law on October 28, 2010 and entered a corresponding "Judgment Pursuant to the Findings of Fact and Conclusions of Law" on March 22, 2011. Appellants filed a timely notice of appeal on April 4, 2011.

On appeal, Appellants raise thirty points of error contending, in essence, that the circuit court erred in entering its judgment for several reasons:

(1) the ban on Appellants was not authorized by statute or regulation;

(2) the ban was a denial of procedural due process; and

(3) the ban was arbitrary and capricious.

## II.

### A.

Appellants contend the ban is invalid because neither the legislature nor the City has made an explicit provision granting the Director of DES the authority to ban persons from working at DES's properties. Revised Charter of the City and County of Honolulu (RCCCH) § 6-702 (2000) outlines the powers, duties, and functions of DES and states in its entirety: "The director of enterprise services shall: (a) Operate and maintain the Neal S. Blaisdell Center and any other auditorium or cultural or entertainment facilities assigned to the department. (b) Perform such other duties as may be required by law."

The authority to suspend persons from DES's facilities is inherent and necessarily incidental to the operation and maintenance of those facilities. We interpret RCCCH § 6-702 as conferring upon the director the ability to exclude persons as necessary to the operations and management of the DES's facilities.

Appellants contend the Director's decision to ban Appellants constituted rule-making and is subject to the requirements of the Hawai'i Administrative Procedure Act (HAPA), Hawai'i Revised Statutes (HRS) Chapter 91 (1993) and of RCCCH § 4-105.[2] It is well established that decisions on matters relating to "the internal management of an agency and not affecting private rights of or procedures available to the public" are not subject to HAPA's restraints on the agency's rule-making power. HRS § 91-1(4) (1993)[3]; Sharma v. State, 66

---

[2] RCCCH § 4-105 describes the powers and duties of heads of executive agencies and states, in relevant part:

> **Section 4-105. Powers and Duties of Heads of Executive Agencies --**
>
>   . . . .
>
> 3. Each head of an executive agency of city government may, subject to approval of the mayor or the managing director, prescribe such rules and regulations as are necessary for the organization and internal administration of the executive agency.
>
> 4. Rules and regulations affecting the public as may be necessary to the performance of the functions assigned to executive agencies may be promulgated as authorized by this charter or by law. Such rules and regulations, after public notice and public hearing and upon approval by the mayor, shall have the force and effect of law. Each head of an executive agency shall file in the office of the city clerk not less than three copies of such rules and regulations. The rules and regulations may be amended or repealed by the same process required for original promulgation.

[3] HRS § 91-1(4) states:

> **§91-1 Definitions.** For the purpose of this chapter:
>
>   . . . .
>
> (4) "Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the

Haw. 632, 637, 673 P.2d 1030, 1034 (1983). RCCCH § 4-105 likewise provides that only the promulgation of rules and regulations "affecting the public" require public notice and hearing. We agree with the City that compliance with the rule-making requirements was not necessary because DES was not acting in a quasi-legislative or quasi-judicial capacity and because the internal management exception applies to DES's actions. Internal management "necessarily includes the custodial management of public property entrusted to the agency." Holdman v. Olim, 59 Haw. 346, 355, 581 P.2d 1164, 1170 (1978).

**B.**

Appellants argue that DES's action in banning Appellants without adequate notice and opportunity to be heard violated Appellants' due process rights.

It is well established that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the [Fifth] Amendment's protection of liberty and property" and that "the range of interests protected by procedural due process is not infinite." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972). To invoke procedural due process protections, Appellants must have either a property or a liberty interest in being allowed to work at DES's facilities. See Applications of Herrick, 82 Hawai'i 329, 342-43, 922 P.2d 942, 955-56 (1996).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. A property interest protected by the due process clause "stem[s] from an independent source such as state

---

organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.

Although the complaint alleged that the City had deprived Appellants of property rights without due process, Appellants fail to point to any source, state law or otherwise, establishing a property interest in working at DES facilities. There is no contract between the City and Appellants or between the City and IATSE for providing work or services at DES's venues, and the fact that Appellants previously worked at DES facilities is not sufficient to establish a claim of entitlement to continued employment opportunities. Appellants acknowledge that as stagehands, they were engaged to work for a particular show only, and their rehiring for future recurring shows was common but not guaranteed and depended on factors such as the types of skills the show required and their availability. Other courts have held that citizens suspended from doing business with the government have no constitutionally protected property interest in obtaining government contracts. See, e.g., Sutton v. U.S. Dep't of Housing and Urban Dev., 885 F.2d 471, 475 (8th Cir 1989); ATL v. United States, 736 F.2d 677, 683 (Fed Cir 1984); Gonzales v. Freeman, 334 F.2d 570, 574 (D.C. Cir. 1964). We similarly conclude Appellants had no constitutionally protected property interest in continuing to work at DES facilities.

Appellants also contend the City deprived them of their protected liberty interests. The liberty concept of the due process clause encapsulates the right to hold private employment and to pursue one's chosen profession free from unreasonable government interference. Greene v. McElroy, 360 U.S. 474, 492 (1959). On the other hand, the Supreme Court of the United States has also held it "stretches the concept [of due process] too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." Roth, 408 U.S. at 575. In Siegert v. Gilley, 500 U.S. 226, 233-34 (1991), the Supreme Court stated that neither the stigmatizing effect of a governmental action nor the consequent

impairment of future employment opportunities are constitutionally cognizable injuries. To prove constitutional injury, one must show that the government has worked some change in his status under law, sufficient to implicate a liberty interest.[4] See Paul v. Davis, 424 U.S. 693, 711-12 (1976).

The Director denied Appellants the opportunity to work at two public venues, the NBC and the Waikiki Shell, but the government's ban in no way proscribes Appellants' rights to practice their profession in the private sector, nor does it impair Appellants' eligibility for public employment at any other venue. Accordingly, we conclude Appellants did not demonstrate that the government's action constrained Appellants' future employment opportunities to a sufficient degree to constitute a status change of due process import.

The nature of the private interest impaired and the governmental power exercised distinguishes this case from Greene v. McElroy, on which Appellants rely. In Greene, the government's revocation of the petitioner's security clearance caused him to lose his job and "seriously affected, if not destroyed, his ability to obtain employment in [his] field"; consequently, the Supreme Court concluded the state action infringed his constitutional liberty interest. Greene, 360 U.S. at 492. Cf. Cafeteria & Rest. Workers v. McElroy, 367 U.S. 886 895-96 (1961) (revocation of short-order cook's permission to work on military base does not implicate liberty interest because she "remained entirely free to obtain employment as a short-order cook or to get any other job," even with same employer at a different facility). As Greene indicates, the standard

---

[4] The District of Columbia Circuit has held that there are two ways in which government action may result in a change of status sufficient to establish deprivation of a liberty interest: by action that formally or automatically excludes the plaintiff from work on a category of future public contracts or government employment opportunities, or by action that precludes the plaintiff from so broad a spectrum of opportunities that it interferes with the right to follow a chosen profession or trade. Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1506 (D.C. Cir. 1995); Kartseva v. Dep't of State, 37 F.3d 1524, 1527 (D.C. Cir. 1994).

Appellants must meet to establish a constitutional injury is high. Because employment options within Appellants' profession remain, we conclude that banning them from two venues did not preclude them from their chosen profession and does not implicate their due process interests.

We also reject Appellants' contention that the City's actions were arbitrary and capricious. "Due process includes a substantive component that guards against arbitrary and capricious government action[.]" <u>Herrick</u>, 82 Hawai'i at 349, 922 P.2d at 962. To establish a substantive due process claim, however, a plaintiff must show a government deprivation of life, liberty, or property, and the absence of any claim that a liberty or property interest has been impaired is a fatal defect in the substantive due process argument. <u>Nunez v. City of Los Angeles</u>, 147 F.3d 867, 871 (9th Cir. 1998). Because Appellants have asserted no cognizable property or liberty interest, their claim based on substantive due process must fail.

## III. CONCLUSION

Based on the foregoing, the "Judgment Pursuant to the Findings of Fact and Conclusions of Law" entered March 22, 2011 in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, November 29, 2012.

On the briefs:

Charles S. Lotsof
and
Jack F. Schweigert
for Plaintiffs-Appellants.

Richard D. Lewallen
John P. Moran
Sherrie K. Sasaki
Deputies Corporation Counsel
City and County of Honolulu
for Defendants-Appellees.

*Craig H. Nakamura*
Chief Judge

*(signature)*
Associate Judge

*(signature)*
Associate Judge

8